IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ROGELIO CANTU, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 4:23-cv-00824-O-BP |
| | § | |
| CITY OF FORT WORTH POLICE, | § | |
| N. W. DIVISION, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are the Rule 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support filed by the City of Fort Worth ("the City") (ECF No. 19), the response to the Motion filed by Plaintiff Rogelio Cantu ("Cantu") (ECF No. 20), and the City's Reply in Support of its Rule 12(b)(6) Motion to Dismiss (ECF No. 22). After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT** the City's Motion and **DISMISS** Cantu's claims against the City without leave to amend. The undersigned also today entered a separate Order for Cantu to show cause why the Court should not dismiss his claims against officers Z. Hornsby, S. Reiss, J. Cherry, and J.A. Vasquez for failure to serve them with process.

**I.    BACKGROUND**

On June 1, 2023, four Fort Worth police officers approached Cantu while he was sitting in the Fort Worth Northside Library. ECF No. 8 at 1. As Cantu explained, "the four officers approached me from both sides, and grabbed my arms and told me to stand up." *Id*. "Not one officer asked me for my name. No officer asked me for my identification," and overall, "nothing

was asked to identify" Cantu before he was arrested. *Id*. Instead, the officers simply "grabbed" Cantu, told him to stand up, told him that he was under arrest, and handcuffed him. *Id*.

When Cantu asked why he was under arrest, an officer responded that there was a warrant for his arrest. *Id*. Cantu repeatedly asked to see the warrant, but the officers did not show it to him. *Id*.

The officers escorted Cantu outside, where he was "interrogated." *Id*. An officer told him that he "look[ed] like the person that fits the warrant." *Id*. Another officer searched him and "pulled [his] wallet out and then [his] identification." *Id*. Cantu told the officers that he did not consent to any of their actions and that they were violating his civil rights. *Id*.

"After the officers identified [Cantu] outside the library, one officer said it was mistaken identity and another officer removed the handcuffs." *Id*. This left "red marks on [Cantu's] wrists with some pain." *Id*. Cantu was asked if he "needed medical attention," but he "declined since the injuries were minor, but were still injuries." *Id*.

An officer told Cantu that if they caught him "driving with no registration, they were going to tow and confiscate [his] car." *Id*. In response, Cantu "expressed to the officer the Texas Transportation Code 502.003 and Title 49 U.S.C. 135.05 on registrations." *Id*. The officer "ignored the code" and told Cantu that he was "free to go." *Id*.

Cantu brought suit for violations of his civil rights under 42 U.S.C. § 1983. ECF No. 8 at 2. He also attempted to sue under 18 U.S.C. §§ 241-42 and 18 U.S.C. § 872, but these are criminal statutes that are enforced by the government rather than by private plaintiffs. *Id*.; *see also Gill v. Texas*, 153 F. App'x 261, 262 (5th Cir. 2005) (explaining that private citizens have "no standing to institute a federal criminal prosecution and no power to enforce a criminal statute."). In a later filing, Cantu also mentioned the Sherman Anti-Trust Act (15 U.S.C. § 1) and the Clayton Anti-

Trust Act (15 U.S.C. § 12) as well as "power tactics," but the antitrust laws are not relevant to the facts of this case, and general references to "power tactics" do not state a claim for the violation of any particular law. ECF No. 16 at 2. Cantu also claims that "[a]ny attempt by the state or county[ ] to convert a claimant[']s property into a commercial asset for the benefit of municipal corporations, without just compensation, is a tort demanded," but he does not explain how this assertion is relevant to his case. *Id*. Accordingly, the Court deems this case to solely be a civil rights lawsuit.

Cantu has sued multiple defendants, but he does not appear to have served all of them within the time allotted under Federal Rule of Civil Procedure 4(m). His initial Complaint lists the Fort Worth Police Dept. N.W. Division as well as the "City of Fort Worth Human Resources / Risk Management" as defendants, but these departments should be understood simply as a division of the City with no separate jural existence. ECF Nos. 1 at 2, 19 at 1; *Darby v. Pasadena Police Dept.*, 939 F.2d 311, 313-14 (5th Cir. 1991).

The Court deemed Cantu's Second Amended Complaint to have added officers Z. Hornsby, S. Reiss, J. Cherry, and J.A. Vasquez as individual defendants (ECF Nos. 8, 9, 15), and the Court denied Cantu's September 18, 2023 request for an extension of time to serve the defendants, finding that a deadline of November 6, 2023 would be sufficient. ECF Nos. 13, 15. However, the Court explained that "Plaintiff should be able to serve process on the defendants by that deadline, but Plaintiff may file a motion requesting additional time if he has good cause for needing more time to complete service of process on the defendants." ECF No. 15 at 2. More than two months have passed since the November 6, 2023 deadline, and Cantu has neither filed an additional motion for an extension of time for service nor served any defendant other than the City. ECF Nos. 18, 21.

The City now moves to dismiss the case, arguing that the police officers did not violate Cantu's constitutional rights, but that even if they had, municipal liability cannot be found against the City according to *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978) and its progeny. For the reasons explained below, the *Monell* doctrine precludes liability for the City on the facts that Cantu pleaded.

## II.   LEGAL AUTHORITIES

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a viable claim for relief, a complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff ... and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A statute of limitations may support dismissal under Rule 12(b)(6) when it is evident from the plaintiff's pleadings that the action is barred, and the pleadings fail to raise some basis for tolling or avoidance of the bar. *Jones v. ALCOA, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

## III.   ANALYSIS

### A.   Cantu has not plausibly pleaded municipal liability.

In essence, Cantu's pleadings allege that individual Fort Worth police officers violated his Fourth Amendment right to be free from unreasonable seizure by arresting him before taking any

action to confirm that he actually was the person described in the arrest warrant that they claimed to have. ECF No. 8. However, even if the officers violated Cantu's rights, the City cannot be held liable, since Cantu has not adequately pleaded municipal liability.

To plead municipal liability under § 1983, Cantu must allege that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009); *see also Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").

The first element of *Monell* requires Cantu to show an official policy, which is:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992).

The second element requires Cantu to plead that the person acting on behalf of the municipality was an official policymaker. *Peterson*, 588 F.3d at 847. The policymaker must have final policymaking authority and take the place of the governing body in a designated area of the municipality's administration. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984); *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984). A municipality's governing body may delegate policymaking authority expressly or implicitly. *Bennett*, 728 F.2d at 769.

The third element requires Cantu to show that a policy is the moving force behind a constitutional violation. *Peterson*, 588 F.3d at 847. To do so, he must show "a direct causal link between the municipal policy and the constitutional deprivation." *Piotrowski*, 237 F.3d at 580. For an official policy to be the moving force behind a constitutional violation, the policymaker must have acted with "deliberate indifference" to the policy's known or obvious unconstitutional consequences. *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997). To act with deliberate indifference, a state actor must know of and disregard an excessive risk to the victim's health or safety. *Id; see McClendon v. City of Columbia,* 305 F.3d 314, 326 n.8 (5th Cir. 2002).

Cantu has never pleaded any facts to show that his arrest arose because of an official policy of the City that an official policymaker promulgated. Similarly, Cantu's pleadings say nothing to show that arresting people before checking that they are actually the people described in the arrest warrant is a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Johnson*, 958 F.2d at 94. Furthermore, when the City asserted in its Motion that Cantu had not adequately pleaded municipal liability (ECF No. 19), Cantu did not address this point in his response (ECF No. 20). Therefore, Cantu has failed to state a plausible constitutional claim against the City.

    **B.    The Court should dismiss Cantu's claims against the City without leave to amend.**

There is a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). It is federal policy to decide cases on the merits rather than technicalities, and the Fifth Circuit thus recommends that suits be dismissed without prejudice on Rule 12 motions. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313

F.3d 305, 329 (5th Cir. 2002). As a result, courts generally allow plaintiffs at least one opportunity to amend following a Rule 12 dismissal on the pleadings, "unless it is clear that the defects are incurable." *Id*. An incurable defect may arise when a complaint's facts are "not actionable as a matter of law." *Id.* In such situations, amendment would be futile, and dismissal with prejudice is appropriate. *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 566 (5th Cir. 2003). Courts may also appropriately dismiss an action with prejudice if the court finds that the plaintiff has alleged his best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Cantu already has amended his complaint twice, and it appears that he has pleaded his best case against the City. Because any further amendment would not be likely to state a viable claim against the City, any further amendment would be futile. Under these circumstances, dismissal with prejudice and without leave to amend is proper.

## IV.   CONCLUSION

Since Cantu has not adequately pleaded the elements of municipal liability, the City of Fort Worth cannot be held liable for any constitutional violations associated with Cantu's arrest on June 1, 2023. Cantu already has amended his complaint twice without curing his claim against the City, so the Court should deny leave to amend his complaint to address municipal liability. Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** Defendant City of Fort Worth's Motion and **DISMISS** Plaintiff's claims against the City of Fort Worth without leave to amend.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state

7

the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

    Signed on January 9, 2024.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE